IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OSSEO IMAGING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 17-1386 (LPS) (CJB) |
| v. | ) | |
| | ) | REDACTED - PUBLIC VERSION |
| PLANMECA USA INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLANMECA'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO STRIKE THE EXPERT REPORT AND
<u>EXCLUDE THE OPINIONS OF JUSTIN R. BLOK</u>**

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | Jack B. Blumenfeld (#1014) |
| | Michael J. Flynn (#5333) |
| | 1201 North Market Street |
| | P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE 19899 |
| | (302) 658-9200 |
| Wasif H. Qureshi | jblumenfeld@mnat.com |
| Leisa T. Peschel | mflynn@mnat.com |
| David K. Wooten | |
| JACKSON WALKER LLP | *Attorneys for Defendant Planmeca USA Inc.* |
| 1401 McKinney, Suite 1900 | |
| Houston, TX 77010 | |
| (713) 752-4200 | |

Original Filing Date: September 23, 2019
Redacted Filing Date: September 30, 2019

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | Introduction | 1 |
| II. | Background | 1 |
| III. | Applicable Law – *Daubert* And Apportionment | 4 |
| IV. | Mr. Blok's Apportionment-Based Opinions Are Inherently Unreliable And Contrary to Law | 5 |
| | A. Mr. Blok's Reliance on Dr. Kia for Apportionment Is Undercut by Dr. Kia's Admissions | 5 |
| | B. Mr. Blok's Failed To Consider A Clearly More Reliable Smallest Saleable Unit | 10 |
| | C. Mr. Blok Effectively But Improperly Invokes The Entire Market Value Rule | 11 |
| V. | Conclusion | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...................................................................................................4

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000)........................................................................................4

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)...............................................................................4, 9

*Garretson v. Clark*,
   111 U.S. 120 (1884).....................................................................................................5

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012).....................................................................................10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018)...................................................................................11

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995).....................................................................................5

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)...................................................................................4

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014).......................................................................4, 10, 11

**Rules**

Federal Rule of Evidence 702.........................................................................................4

## TABLE OF EXHIBITS

EXHIBIT A    Selected Excerpts from September 5, 2019 Deposition of Justin R. Blok ("Blok Tr.") (including pages 8, 24–25, 50–51, 54, 57–58, 64–65, 69, 72, 81–84, 105–107, 161–163) (**FILED UNDER SEAL**)

EXHIBIT B    Selected Excerpts from May 30, 2019 Expert Report of Walter Bratic and Justin R. Blok ("Damages Report") (including ¶¶ 65, 102, 113) (**FILED UNDER SEAL**)

EXHIBIT C    Selected Excerpts from May 30, 2019 Expert Report of Dr. Omid Kia Regarding Infringement of U.S. Patent Nos. 6,381,301, 6,944,262, and 8,498,374 ("Kia Inf. Report") (including ¶¶ 64, 65) (**FILED UNDER SEAL**)

EXHIBIT D    Selected Excerpts from August 9, 2019 Transcript of Deposition of Dr. Omid Kia ("Kia Tr.") (including pages 35, 131, 133, 162-166, 171, 258–261, 264, 266, 271–273) (**FILED UNDER SEAL**)

EXHIBIT E    Selected Excerpts from March 29, 2019 Transcript of Deposition of Ronald E. Massie ("Massie Tr.") (including page 95) (**FILED UNDER SEAL**)

EXHIBIT F    Selected Excerpts from August 27, 2018 *Markman* Hearing Transcript (including page 7)

EXHIBIT G    Selected Excerpts from Rebuttal Expert Report of Dr. Norbert Pelc Regarding Noninfringement & Other Technical Issues ("Pelc Noninf. Report") (including ¶¶ 259–281) (**FILED UNDER SEAL**)

EXHIBIT H    September 5, 2019 Updated Exhibit 6.1 to May 30, 2019 Expert Report of Walter Bratic and Justin R. Blok (**FILED UNDER SEAL**)

## I. INTRODUCTION

Osseo's damages expert Justin R. Blok's report and opinions should be struck for at least the same reasons why its technical expert Dr. Omid Kia's report and opinions on apportionment should be struck. This is because Mr. Blok repeatedly confirmed in deposition that his ultimate damages opinion in this case "solely" rests on Dr. Kia's one page apportionment opinion (consisting of a wholly unsupported "feature analysis" table and two paragraphs). Ex. A, Blok Tr. at 8:7–8; 54:8–11 ("First, I want to make it clear that it's Dr. Kia's apportionment analysis. I relied upon him solely for the apportionment analysis. So it wasn't my opinion."); 57:23–58:11; 72:9–12; 83:7–21 (Blok confirming no separate analysis performed of economic value of the patented versus nonpatented features). Mr. Blok thus had no choice but to admit that his damages opinions would fall if Dr. Kia's apportionment table was found unreliable. *Id*. at 58:12–20 ("If it is found that [Dr. Kia's] opinion is improper or incorrect, then it would have an impact on my damages, yes."). Indeed, Mr. Blok's concession at the beginning of his deposition that a certain feature percentage in Dr. Kia's apportionment table had to be adjusted in view of Dr. Kia's deposition testimony confirms that that table is arbitrary and unreliable in view that Dr. Kia's testimony also undercut various other aspects of that table in response to which Mr. Blok made no adjustment.

Accordingly, at least because Dr. Kia's apportionment analysis is arbitrary and unreliable and Mr. Blok has no apportionment basis at all otherwise, Mr. Blok's damages report and opinions in this case should be struck. *Id*. at 83:16–84:3 (Blok testimony that he did nothing to confirm Dr. Kia's apportionment table).

## II. BACKGROUND

Mr. Blok's methodology for arriving at his reasonable royalty in this case comprises: (i) ███████████████████████████████████████████████████████████; (ii) ███

███████████████████████████████████████; (iii) apportioning 85% of the profits to the Patents-in-Suit based on Mr. Blok's conclusion that "85% of the functionality and benefits provided by the Accused Systems is directly attributable to the asserted claims of the Patents-in-Suit" (Ex. B, Blok Damages Report[1] ¶ 102); and (iv) applying a 50% "split of the benefits received by Planmeca" (*id.* at ¶ 113), ███████████ ███████████.[2] Mr. Blok's reasonable royalty rubric is summarized in the table below:



Mr. Blok's 85% apportionment factor solely stems from Dr. Kia's "feature analysis" apportionment table reproduced below. Notably, Dr. Kia's entire support for his apportionment table, upon which Osseo's damages ask in this case is significantly dependent, is limited to a

---

[1] Osseo's damages expert report was co-signed by Mr. Blok and his colleague Walter Bratic. But Osseo unilaterally refused to produce Mr. Bratic for deposition. In exchange, Osseo agreed that (i) all of the opinions in Osseo's damages case are that of Mr. Blok, (ii) it will not present Mr. Bratic at trial, and (iii) it will not reference Mr. Bratic unless solicited by the Court or Planmeca's counsel.

[2] Planmeca does not in any way concede that this methodology is proper, reasonable, accurate, or reliable. Generally, Mr. Blok's reliance on an 85% apportionment factor followed by a 50/50 profit split is grossly unreasonable and untethered to factual reality in view of the limited, if any, inventive footprint of the Patents-in-Suit relative to what was already known in the prior art and the scores of valuable, consumer-driving non-infringing features found in the Accused Products. Planmeca's damages expert John R. Bone also disagrees that Mr. Blok's average selling price calculation is accurate because ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Mr. Bone also, for example, disagrees with Mr. Blok's 50/50 "split of the benefits" as arbitrary and unreasonable that Planmeca would concede half of its profits in the hypothetical negotiation.

single five-sentence conclusory paragraph providing no reliable or discernible correlation to or basis for the apportionment percentages in the table. *See id.* at ¶ 65.

| Feature Analysis of 3D Imaging Systems | | |
|---|---|---|
| List of Features | Weight of Feature | Taught by the Asserted Patents |
| 3D Cone Beam Computed Tomography (3D CBCT) Model Scan | 55% | 55% |
| Volume stitching/SmartPan | 20% | 20% |
| Open patient positioning | 5% | 5% |
| Ultra Low Dose protocol | 5% | - |
| SCARA Technology | 5% | 5% |
| Endodontic mode | 5% | - |
| AINO noise removal | 5% | - |
| Total Benefit | 100% | 85% |

Ex. C, Kia Inf. Report at ¶ 64.

When questioned in deposition on August 9, 2019 about the second row of his apportionment table, Dr. Kia testified (i) that the "SmartPan" feature in the accused Planmeca products generally constituted half of the listed 20% "Volume stitching/SmartPan" value purportedly flowing from the Patents-in-Suit (Ex. D, Kia. Tr. at 165:3–12 ("I think we will just give a 10 and 10 generally.")) but (ii) **that "SmartPan" does not infringe** (*id.* at 131:13–18 (SmartPan "does not" meet the tomographical densitometry model limitation); 260:16–20).[3]

At Mr. Blok's deposition almost a month later on September 5, 2019, he produced an updated royalty rate calculation based on a 75% apportionment factor (removing 10% due to Dr. Kia's SmartPan admissions), ███████████████████████████ (Ex. H):

---

[3] Dr. Kia has not produced an updated apportionment table.

3



As will be discussed below, in addition to Dr. Kia's apportionment table being arbitrary and unreliable (especially in view of various other features of the accused systems not reflected in his table), Dr. Kia's concessions in his deposition about various features in his table being prior art and/or not infringing results in Mr. Blok's damages opinions being unsupportable under apportionment law. Mr. Blok essentially conceded this by being compelled to adjust the apportionment factor to 75% due to Dr. Kia's admissions that SmartPan does not infringe.

## III. APPLICABLE LAW – *DAUBERT* AND APPORTIONMENT

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the U.S. Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." The rule requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). There are three distinct requirements for admissible expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See generally Elcock v. Kmart Corp.*, 233 F.3d 734, 741–46 (3d Cir. 2000).

"[The patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features . . . or show that the entire market value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("a reasonable royalty analysis requires a court to carefully tie proof of damages to the claimed invention's footprint in the market place") (citations omitted); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. . . . The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.").

An exception to the apportionment requirement is the "entire market value rule" (EMVR). To rely on the EMVR, the patentee "must show . . . that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). The EMVR relieves a patentee from apportioning its damages ***only*** when the patentee can show that "the patent-related feature is the 'basis for customer demand.'" *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (citations omitted).

IV. **MR. BLOK'S APPORTIONMENT-BASED OPINIONS ARE INHERENTLY UNRELIABLE AND CONTRARY TO LAW**

A. **Mr. Blok's Reliance on Dr. Kia for Apportionment Is Undercut by Dr. Kia's Admissions**

It is undisputed that the accused Planmeca systems are multi-component systems with non-infringing features. Ex. A, Blok Tr. at 105:22–106:2; 107:10–18. And Mr. Blok claims that

5

his damages opinions do not invoke the EMVR. *See id.* at 65:2–5 ("there was no analysis or use of the Entire Market Value rule").[4] Thus it was required for Mr. Blok to perform an appropriate apportionment analysis. Mr. Blok, however, did not perform his own apportionment analysis and instead solely rested on Dr. Kia's "feature analysis" apportionment table. *See* Section II *supra*.

The critical problem with Mr. Blok's use of Dr. Kia's apportionment table is that Dr. Kia testified (a few months after he submitted his table) that various aspects of the features in his table were prior art and/or not infringed:

| Dr. Kia's May 30, 2019 apportionment table | | | Dr. Kia's August 9, 2019 Testimony / Other Admissions | Mr. Blok's Response/Testimony[5] |
|---|---|---|---|---|
| List of Features | Weight of Feature (in accused products) | Taught by the Asserted Patents | | |
| 3D Cone Beam Computed Tomography (3D CBCT) / Model Scan | 55% | 55%[6] | - Admitted that computed tomography and 3D computed tomography are prior art. Ex. D, Kia Tr. at 171:9–15.<br>- Admitted that Dr. Massie did not invent cone beam computed tomography. *Id.* at 35:6–8; *see also* Ex. E, Massie Tr. at 95:6–9 (███████████████); Ex. F, Aug. 27, 2018 Hr. Tr. at 7:13–15 (Osseo's counsel admitting that Dr. Massie did not invent | *No adjustment.* Failed to apportion down any of the value of "3D CBCT / Model Scan" feature attributable to that which existed in the prior art and/or does not infringe. |

---

[4] However, as discussed below, Mr. Blok's damages methodology should be struck also because it effectively invokes the EMVR without the necessary showing of consumer demand.

[5] Mr. Blok testified that he did not read Dr. Kia's testimony on apportionment but rather gained an understanding from Osseo's counsel. Ex. A, Blok Tr. at 24:24–25:5.

[6] The interpretation of Dr. Kia's percentages here is that 55% of the value of the Accused Products is attributable to this feature and 100% of that value is attributable to the Patents-in-Suit.

6

| | | | tomographic scanning or densitometry).<br>- Admitted that the cast model scan (i) "do[es]n't measure the density of a bone with that, but you measure the density of the cast" and (ii) does not meet the tomographical densitometry model limitation. Ex. D, Kia Tr. at 162:15–163:8; 163:20–164:20.<br>- Testified that Planmeca's patient management software is included in this feature but admitted that the entirety of such software does not relate to 3D CBCT. *Id.* at 264:20–25; 266:3–6. | |
|---|---|---|---|---|
| Volume stitching / SmartPan | 20% | 20% | - Admitted that SmartPan does not infringe. *Id.* at 131:13–18; 260:16–20.<br>- Testified that only a subset of the accused products have volume stitching. *Id.* at 133:9–13. | Reduced apportionment to 10% as result of excluding SmartPan. But *failed* to apportion down the "volume stitching" feature to only those accused products having that feature. Mr. Blok instead improperly applied the 10% apportionment factor ▌ |
| Open patient positioning | 5% | 5% | - Admitted that prior art systems had to have an opening to position patient. *Id.* at 166:7–14. | Admitted that this feature is present in Planmeca's 2D systems, none of which are accused. Ex. A, Blok Tr. at 57:15–16. |
| Ultra Low Dose protocol | 5% | - | | |
| SCARA | 5% | 5% | - Admitted that SCARA has | *No adjustment.* Failed |

7

| technology | | | non-accused imaging uses. Ex. D, Kia Tr. at 271:7–9, 11.<br>- Admitted that SCARA can be used in non-infringing 2D panoramic infringing, which admittedly is not accused. *Id.* at 272:18–273:2.<br>- Testified that panoramic imaging on a 3D machine could be used in SmartPan, which he earlier admitted does not infringe. *Id.* at 273:3-4, 6; 131:13-18; 260:16-20.<br>- Admitted that traditional panoramic imaging would not infringe. *Id.* at 273:8-11. | to apportion down any of the value of the SCARA feature attributable to that which does not infringe and/or is not accused.<br>Mr. Blok admitted that the SCARA feature is present in Planmeca's 2D systems, none of which are accused. Ex. A, Blok. Tr. at 57:12-18; 69:10-16. |
|---|---|---|---|---|
| Endodontic mode | 5% | - | | |
| AINO noise removal | 5% | - | | |
| Total Benefit | 100% | 85% | | |

In addition to Dr. Kia unreasonably boiling down all the accused systems to a mere seven features and then ascribing value to aspects of those features even though they are prior art, admittedly do not infringe, and/or are not accused, the arbitrary and unreliable nature of Dr. Kia's apportionment table is further illustrated by Planmeca's expert Dr. Norbert Pelc's identification of numerous other publicly known features of the accused systems. Ex. G, Pelc Noninf. Report ¶¶ 259–281. As Dr. Pelc stated, Dr. Kia's reduction of the accused systems to just seven features "has the inappropriate effect of overinflating the overall importance of the features he attributes to the Patents-in-Suit." *Id.* ¶ 259. For example, it is simply not reasonable or reliable for Dr. Kia and Mr. Blok to rest any opinion on an arbitrary observation that 55% of the overall value of the accused systems is attributable to 3D CBCT (which Dr. Massie did not

8

invent), especially when they have shown no evidence about the importance or use of 3D CBCT in the market or to dental clinicians.

When confronted with various features of the accused systems not specifically identified in his apportionment table, Dr. Kia often deflected that those features are captured because even though they may not infringe they are "related" to some identified feature in the table. *See, e.g.*, Ex. D, Kia Tr. at 258:19–259:9; 261:10–12. But that reasoning is hardly sufficient to include the value of related but non-accused/accusable features. Extending Dr. Kia's logic would result in clearly unreliable valuations where, for example, wires need to transmit power in the accused systems would have damages value in this case because power is needed to perform 3D CBCT. Even Mr. Blok had to testify that the patentee has to: "apportion[ ] out any features or functionalities that are ***not directly attributable*** to the patents-in-suit. So you have to apportion out the value that is created by those nonpatented features that's not attributable to the patents-in-suit." Ex. A, Blok. Tr. at 81:20–82:2 (emphasis added). But then when pressed on Dr. Kia's apportionment being unreliable, Mr. Blok testified that "I don't think you can limit the [patented invention's] economic footprint to just the asserted claims." *Id*. at 50:20-23, 50:25–51:9. And Dr. Kia and Mr. Blok did just that—they improperly and arbitrarily ascribed value to "related" but not patented features without any evidence or facts establishing such value as directly attributable to the incremental value of what is patented. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. . . . The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.").

Further compounding the unreliability of Dr. Kia's apportionment table and consequently Mr. Blok's damages opinions is the dearth of analysis or support for Dr. Kia's table. Dr. Kia's single supporting paragraph for his apportionment table altogether fails to tie any facts, evidence, or proof to his seemingly arbitrary apportionment percentages. Ex. C, Kia Inf. Report ¶ 65. Dr. Kia provides no explanation as to why his seven selected features should amount to 100% of the value of the accused systems to the exclusion of so many other features that the accused systems have and in many cases are specifically marketed by Planmeca. Thus, Dr. Kia's apportionment table is inherently and through his own admissions in his deposition unreliable. And because Mr. Blok failed to do any apportionment analysis of his own, his damages opinion based on apportionment should be struck as unreliable and contrary to law. Ex. A, Blok Tr. at 8:7–8; 54:8–11 ("First, I want to make it clear that it's Dr. Kia's apportionment analysis. I relied upon him solely for the apportionment analysis. So it wasn't my opinion."); *see, e.g.*, *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("a reasonable royalty analysis requires a court to carefully tie proof of damages to the claimed invention's footprint in the market place").

> **B.** **Mr. Blok's Failed To Consider A Clearly More Reliable Smallest Saleable Unit**

It is undisputed that Osseo is not accusing Planmeca's 2D systems. And it is undisputed that Planmeca's 3D systems incorporate the functionalities of Planmeca's 2D systems, where the 3D functionalities can be optionally purchased as part of one or more 3D upgrades. Despite this making it clear that Planmeca's 3D upgrade packages and pricing should serve as the ceiling for the smallest saleable patent-practicing unit (SSPPU) from which to apportion, Mr. Blok's damages model rests on the average selling price of the accused Planmeca 3D systems as a whole, which include 2D functionalities extant before and after a 3D upgrade. *See* Section II *supra*. Mr. Blok's failure to employ any rigor to valuing the 3D upgrade for his apportionment

base renders Mr. Blok's unreliable and contrary to law requiring apportionment of the SSPPU. Ex. A, Blok Tr. at 161:19–25 (testifying that he does not even know what is included in a 3D upgrade); 162:15–24 (same); 163:11–15 (admitting that "I don't have a basis to dispute whether or not the features Dr. Pelc identified as being part of the 3D upgrade or not [sic] part of the 3D upgrade"); Ex. D, Kia. Tr. at 273:12–15 (Dr. Kia also admitting that he did not do any analysis to determine what is included in an upgrade of a Planmeca 2D system to a 3D system); *see LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67–68 (Fed. Cir. 2012) ("We reaffirm that in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature.").

    **C.**    **Mr. Blok Effectively But Improperly Invokes The Entire Market Value Rule**

By having failed to start his apportionment analysis at the obvious place to do so in this case—Planmeca's 3D upgrade packages—and instead starting with the average sales price of all the accused 3D systems (which indisputably have various non-accused 2D/pre-3D upgrade features that can only be captured for damages under the EMVR), Mr. Blok has improperly invoked the EMVR. *See VirnetX*, 767 F.3d at 1329 (a patentee "cannot simply hide behind [defendant's] sales model to avoid the task of apportionment"). It should not matter that Mr. Blok claims that he did not employ the EMVR when his damages model is effectively based on top line sales numbers for the accused products ███████████████████ ███████████████████, which are indisputably multi-component systems of which a vast portion are non-accused features. *See* Section II *supra*. But Mr. Blok admittedly has not undertaken any analysis to justify his inherent application of the EMVR. *See, e.g.*, Ex. A, Blok Tr. at 64:11–15 ("I didn't analyze demand . . . ."); 65:2–5 (same); 65:12–14 (no use of surveys to

assess demand). Accordingly, Mr. Blok's opinions for his reasonable royalty should be struck as an unsupportable and insufficient attempt to effectively use the EMVR. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) ("[T]he entire market value rule is appropriate only when the patented feature is the sole driver of customer demand or substantially creates the value of the component parts. The burden of proof in this respect is on the patent holder.") (citations omitted).

## V. CONCLUSION

For the foregoing reasons, Planmeca requests that the Court strike Mr. Blok's damages opinions in this case, as they are based on unreliable apportionment and an improper invocation of the entire market value rule.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Planmeca USA Inc.*

OF COUNSEL:

Wasif H. Qureshi
Leisa T. Peschel
David K. Wooten
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200

September 23, 2019