# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

OSSEO IMAGING, LLC,

      Plaintiff,

v.

PLANMECA USA, INC.,

      Defendant.

**C. A. No.** 1:17-cv-01386-LPS-CJB

PUBLIC REDACTED VERSION

---

## PLAINTIFF OSSEO IMAGING, LLC'S ANSWERING BRIEF IN OPPOSITION TO PLANMECA'S USA, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT AND INVALIDITY OVER THE PRIOR ART

Dated: October 11, 2019

OF COUNSEL:

MEISTER SEELIG & FEIN LLP
Seth H. Ostrow
Jeffrey P. Weingart
Antonio Papageorgiou
Sarah Pfeiffer
 sap@msf-law.com
125 Park Avenue
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536
sho@msf-law.com
jpw@msf-law.com
ap@msf-law.com
sap@msf-law.com

BAYARD, P.A.

  */s/  Stephen B. Brauerman*  
Stephen B. Brauerman (Del Bar No. 4952)
600 N. King Street, Suite 400
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff*
*OSSEO IMAGING, LLC*

# TABLE OF CONTENTS

I.   Nature and stage of the proceedings ............................................................................ 1

II.  Summary of Arguments ............................................................................................... 1

III.   Factual Background ................................................................................................... 2

IV.   Legal Standards ......................................................................................................... 6

V.   ARGUMENT ............................................................................................................ 8

   A.   The Accused Products "quantitatively calculate bone density" for dentists to assess

   the patient's bone density for dental implants. ............................................................. 8

   B.   The record contains sufficient testimony to establish infringement under the

   doctrine of equivalents. ................................................................................................. 12

   C.   There is a genuine material dispute whether the Asserted Claims are obvious in

   view of Cann 1980, Guenther, Mazess, and Brummer .................................................. 15

VI.   Conclusion ................................................................................................................ 18

## **TABLE OF AUTHORITIES**

**Cases**

*Allied Colloids Inc. v. American Cyanamid Co.*, 64 F.3d 1570 (Fed. Cir. 1995)............. 14

*Arctic Cat, Inc. v. Bombardier Recreational Products Inc.*, No. 12–2692, 2018 WL
    654218 (D. Minn. Jan. 2, 2018). ................................................................................. 15

*Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241 (Fed. Cir. 2000) .................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 6

*Conroy v. Reebok Intern., Ltd.*, 14 F. 3d 1570 (Fed. Cir. 1994)....................................... 14

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F. 3d 1314 (Fed. Cir 2009) .. 18

*Fuji Machine Mfg. Co. Ltd. v. Hover-Davis, Inc.*, 60 F.Supp.2d 111 (W.D.N.Y. 1999) . 14

*Kahn v. Gen. Motors Corp.*, 135 F.3d 1472 (Fed. Cir. 1998)............................................. 7

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342 (Fed. Cir. 2012) ............. 8

*KSR Int'l Co. v. Telefax Inc.*, 550 U.S. 398 (2007) ........................................................... 7

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) .............................. 7

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*,
    517 U.S. 370 (1996).................................................................................................... 7

*MEDICHEM, SA v. ROLABO, SL*, 437 F. 3d 1157 (Fed. Cir. 2006) ............................... 18

*OSRAM Sylvania, Inc. v. Am. Induction Tech., Inc.*, 701 F.3d 698 (Fed. Cir. 2012) ......... 8

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)..................................... 8

*Pitney Bowes, Inc. v. Hewlett Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) .......... 7

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................................ 6

*Warner Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)............................. 7

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F. 2d 677 (Fed. Cir. 1994)14

**Statutes**

35 U.S.C. § 271(a) ........................................................................................... 7

Fed. R. Civ. P. 56(a) ...................................................................................... 6

Fed. R. Civ. P. 56(c) .................................................................................... 15

Plaintiff OSSEO IMAGING, LLC ("Osseo") hereby opposes the Motion for Summary Judgment of No Infringement and Invalidity in View of Prior Art (D.I. 94, the "Motion"), filed by Defendant PLANMECA USA, INC. ("Planmeca" or "Defendant") in the above-captioned action on September 23, 2019.

## I.      Nature and stage of the proceedings

Plaintiff Osseo Imaging, LLC ("Osseo") filed this lawsuit against Planmeca USA, Inc. ("Planmeca") on October 3, 2017 alleging infringement by Planmeca of U.S. Patent No. 6,381,301 ("the '301 patent"), U.S. Patent No. 6,944,262 ("the '262 patent"), and U.S. Patent No. 8,498,374 ("the '374 patent") (collectively "the Patents-in-Suit").  The Court issued a Claim Construction Order on November 2, 2018. D.I. 46 and discovery has closed.  The parties exchanged expert reports and each party filed motions to exclude the other party's reports.  D.I. 96-100, 102-104.  Planmeca further filed two motions for summary judgement of invalidity and noninfringement (D.I. 92-95).  Trial is scheduled to begin on May 18, 2020 (D.I. 18).

## II.      Summary of Arguments

The Court has construed the limitations in dispute with respect to infringement and invalidity over the prior art that Planmeca simply does not agree with.  Expert discovery has closed and its expert, Dr. Pelc, confirmed that there is no specific accuracy requirement to meet the requirements of the "densitometry" limitation, for example.  Yet, Planmeca refuses to let go of the idea that the Asserted Claims require a BMD level of accuracy, a requirement that the Court rejected.  Planmeca's arguments with respect to there being a genuine issue of material fact are therefore premised on factual allegations applied to non-existent requirements. ██████████████████████

██████████████████████████████████████████

1



. Planmeca's arguments with respect to the sufficiency of Osseo's theories of infringement under the doctrine of equivalents similarly defy the record of evidence on this issue

That is not the only factual dispute, the parties disagree on the "densitometry model" and "comparing model" terms, and also on the motivation to combine the references relied on by Planmeca in its motion.  Importantly, Planmeca attempts an untimely supplemental expert report with additional opinions with respect to the scope of the prior art misleading presented as "declaration".  Osseo has not had an opportunity to respond to the supplemental report and there is no basis to conclude that there is no genuine issue with respect to whether the Cann 1980 reference discloses the claim limitation at issue is in the prior art.

Accordingly, for these reasons and the reasons discussed below, the Court must deny Planmeca's motion for summary judgement on all grounds.

### III.   <u>Factual Background</u>

Planmeca's motion for summary judgment of No Infringement and Invalidity Over the Prior Art alleges that

that the Asserted Claims are invalid as obvious over the prior art, including a combination of *Cann et al.*, "Precise Measurement of Vertebral Mineral Content Using Computed Tomography" Journal of Computer Assisted Tomography 1980 ("Cann"), U.S. Patent No. 5,500,884 to Guenther et al. ("Guenther"), U.S. Patent No. 6,315,445

2

("Mazess"), and U.S. Patent No. 6,898,302 ("Brummer").  *See* Op. Br. (D.I. 95). ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████Both experts provided

relevant testimony in their respective depositions.  *See* Ex. D-E.

The Court construed "densitometry" to mean "quantitatively calculating bone density", and the "densitometry model" and "tomographic model" terms to mean "merging information from multiple tomographic scans of an object to produce a representation of the subject/said representation depicting quantitative density differences of the object scanned, which is created by the microprocessor in the controller using densitometry from at least one focal lane."  (D.I. 44 at 5-9, D.I. 45 at 2).

██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████   ████████████████████   █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████



With regard to validity over the prior art, Dr. Pelc alleged that the Asserted Patents were anticipated and/or obvious over certain references, but admitted that a number of those references, including Guenther and Brummer, "alone [do] not disclose quantitatively calculating bone density under [the Court's] interpretation of that requirement." Ex. A at 106 (¶261)) and 174 (¶430). Dr. Pelc nonetheless urged theories of invalidity (anticipation and obviousness) using another construction, one not limited to "quantitatively calculating bone density". *Id.* at 76-77 (¶¶189-190), 80 (¶198), 84-58 (¶¶208-209), 106 (¶261)), 174 (¶430). Osseo moved to exclude Dr. Pelc's invalidity opinions over the prior art to the extent that those opinions rely on a construction that ignores the Court's "quantitatively calculating bone density" limitations. (*See* D.I. 104).

For his part, Plaintiff's expert Dr. Kia opined that the "Asserted Claims are not invalid in view of or based on at least the prior art identified in the Opening Invalidity Report" (Ex. C at 7), because, *inter alia*, the references do not disclose the "merging information from multiple tomographic scans" as required by the Court's claim construction for the tomographic model terms and the "comparing model" terms, and

because Kia disagreed with Dr. Pelc's reasons for combining references.  Ex. C at 7, 19-27 (¶¶59-85).  Dr. Pelc did not disagree that the references do not disclose the merging scans limitation, except for U.S. Patent No. 5,214,686 to Webber (Ex. B at 10-11 (¶17)), which is not included in Planmeca's motion for summary judgment on obviousness.

## IV.    <u>Legal Standards</u>

"Summary judgment is appropriate where the court is satisfied 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (quoting Fed. R. Civ. P. 56(a)).  The burden to show the nonexistence of a "genuine issue" rests on the moving party.  *Id.* (citation omitted).  This burden has two distinct components, which includes an initial burden of production and the ultimate burden of persuasion.  *Id.*  "The burden of production … requires the moving party to make a prima facie showing that it is entitled to summary judgment."  *Id.* at 331 (citation omitted).  Where "the moving party [bears] the burden of persuasion at trial, that party must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial."  *Id.* (citation omitted).  If, on the other hand, the "the burden of persuasion at trial would be on the nonmoving party, the [moving party must either] submit affirmative evidence that negates an essential element of the nonmoving party's claim [or] demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id.*  The "nonmoving party may defeat a motion for summary judgment that asserts that the nonmoving party has no evidence by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."  *Id.* at 332.

In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A patent is infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a). Infringement is a question of fact, which involves comparing the properly construed claims against the accused infringing product. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents "if there is not a substantial difference between the limitations of the claim and the accused product." *Id.* at 1250-51 (citing *Warner Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39-41 (1997)). "[S]ummary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims" as construed by the court. *Pitney Bowes, Inc. v. Hewlett Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

The test for obviousness under 35 U.S.C. § 103 involves four factors: (1) the scope and content of the prior art; (2) the differences between the asserted claims and the

prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations of nonobviousness, if any. *KSR Int'l Co. v. Telefax Inc.*, 550 U.S. 398, 406-07, 415 (2007). Obviousness is a question of law based on underlying facts. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356-57 (Fed. Cir. 2012). "[A] party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *OSRAM Sylvania, Inc. v. Am. Induction Tech., Inc.*, 701 F.3d 698, 706 (Fed. Cir. 2012) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)).

## V.  ARGUMENT

### A. The Accused Products "quantitatively calculate bone density" for dentists to assess the patient's bone density for dental implants.







███████████████████████████████████

███████████████████████████████████

████████████████  █████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████

      ███████████████████████████

███████████████████████  ████████████

███████████████████████████████████

████████████  ██████████████████████

███████████████████████████████████

████████████████████████

**B. The record contains sufficient testimony to establish infringement under the doctrine of equivalents.**

Through its expert Dr. Kia, Plaintiff has provided more than sufficient factual

basis to establish infringement under the doctrine of equivalents. ████████████████

████  ██ ██ ████ █████ ██████ ████████ ████ ██ ██ █

██████████████████  ████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████  ██  █████████████████████████

███████████████████████████████████

13

██████████████████████████████  Credibility

determinations, however, "should not be made by the court on a motion for summary

judgment." *Fuji Machine Mfg. Co. Ltd. v. Hover-Davis, Inc.*, 60 F.Supp.2d 111, 120

(W.D.N.Y. 1999) (citing *Allied Colloids Inc. v. American Cyanamid Co.*, 64 F.3d 1570,

1575 (Fed. Cir. 1995)).

Additionally, Planmeca's reliance on *AquaTex Indus., Inc. v. Techniche Solutions,*

is misplaced.  479 F.3d 1320 (Fed. Cir. 2007).  In *AquaTex Indus., Inc.*, AquaTex, "in

response to the motion for summary judgment of non-infringement, provided no

particularized testimony from an expert or person skilled in the art that specifically

addressed equivalents…" *Id.* at 1329.  "The only evidence presented by AquaTex on the

issue of equivalents was the deposition testimony of Doug Frost, Techniche's Chief

Executive Officer [but this] only explained how the defendant's product operated." *Id.*

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████Again, credibility between the Parties' experts is a question for the jury to decide.

Planmeca further argues that "Osseo's equivalents theory should also be rejected

as a matter of law because it impermissibly ensnares the prior art", but this argument also

lacks merit.  Op. Br. at 5-6.  First, ensnarement cannot be resolved at this stage of the

case.  Ensnarement is a defense to infringement, but the analysis is predicted on finding

of infringement under the doctrine of equivalence.  *See Wilson Sporting Goods Co. v.

David Geoffrey & Assoc.*, 904 F. 2d 677, 683 (Fed. Cir. 1994); *Conroy v. Reebok Intern.,

Ltd.*, 14 F. 3d 1570, 1577 (Fed. Cir. 1994) (finding that "[t] he existence of a genuine

issue of material fact [regarding infringement under the doctrine of equivalents] precludes summary judgment for [the defendant] as a matter of law.") (citing Fed. R. Civ. P. 56(c)).

Here, there is a genuine issue of material fact regarding infringement, both literal and under the doctrine of equivalents, as discussed above, and summary judgement on the issue of ensnarement is precluded.  Second, there are factual issues regarding the scope of the prior art as discussed below, which also preclude summary judgment.  *See*. *Arctic Cat, Inc. v. Bombardier Recreational Products Inc*., No. 12–2692, 2018 WL 654218, at *10 (D. Minn. Jan. 2, 2018) ("But Arctic Cat need not meet its burden of persuasion here; it need only show that there remains a genuine issue of material fact as to whether applying the doctrine of equivalents would ensnare the prior art".) (citing *Celotex Corp.*, 477 U.S. at 323).  Finally, Planmeca has not shown that there is no genuine issue of material fact as to whether applying the doctrine of equivalents would ensnare the prior art.  *Id.* ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

### C.   There is a genuine material dispute whether the Asserted Claims are obvious in view of Cann 1980, Guenther, Mazess, and Brummer

Dr. Kia concluded that, *inter alia*, the references cited by Planmeca fail to disclose "merging information from multiple tomographic scans as required by the Court's claim construction in each of the Asserted Claims", including Cann 1980, Guenther, Mazess, and Brummer. Ex. C at 25 (¶75), *see also*, *id*. at 25-28 (¶¶76-85).  Dr. Pelc did not dispute Dr. Kia's findings that the prior art does not disclose the merging

tomographic scan limitation, except with respect to the Webber patent.  Ex. B at 10-11 (¶17); Ex. A at 81-82 (¶¶199-200), Ex. B at 10-11 (¶17).  Tellingly, Webber is now absent from Planmeca's allegations of obviousness.  Dr. Pelc did not assert during expert discovery that Cann 1980 teaches this merging limitation—Cann 1980 was cited only for the comparing model terms.  *See* Ex. A at108-109 (¶266).

Now that Planmeca is left with a hole in its obviousness theories, Planmeca submits a "declaration" by Dr. Pelc, that is effectively a supplement to his expert reports, with arguments attempting to fill this hole in its defenses long after the close of expert discovery.  (D.I. 18 at 8(f)(i), D.I. 70).  Specifically, Dr. Pelc asserts for the first time in his declaration supporting Planmeca's motion for summary judgement that Cann 1980 discloses the merging limitation.  Op. Br. Ex. D at 59-60 (¶150).  Dr. Pelc's new opinion includes an explanation regarding the merging limitation that Dr. Kia could not address within the confines of expert discovery imposed by the Court.  Accordingly, the Court should exclude ¶150 of Dr. Pelc's declaration for Planmeca's glaring attempt to submit an untimely supplemental report without leave of court.  Fed. R. Civ, P, 37(c)(1).  Allowing Planmeca's supplemental report without the ability to cross-examine the declarant and submit a rebuttal report would undoubtably unfairly prejudice Osseo, whereas there would be little prejudice to Planmeca who has already cited the Webber patent for merging limitation.  Regardless, there is a genuine dispute whether the prior art discloses the merging limitation of the Asserted Claims.

Dr. Kia further concluded that the references "fail to teach the comparison limitations as claimed."  Ex. C at 25-26 (¶¶75, 79), *see also, id.* at 26-28 (¶¶78-85).  Planmeca, however, does not explain in its brief how the prior art teaches the comparison

limitations. Op. Br. at 7. Planmeca attempts to skirt its burden of production by alleging that Dr. Kia's "arguments with respect to 'comparing models' depends on his opinion that the claimed models are not disclosed by the art", but again Planmeca's misrepresentation are easily disproven. Op. Br. at 7. For example, Dr. Kia explained that "Guenther 884 merely discusses 'digital image processing', which does not inherently disclose ***storing*** tomographic models as claimed, and further fails entirely to disclose the ***comparing*** tomographic model limitations of the Asserted Claims." Ex. C at 27 (¶81) (emphasis added). With regard to Brummer, Kia concluded that, in addition to not disclosing the claimed models, "Brummer [] merely discusses 'storage of images and image models'" and Brummer does not therefore disclose comparing such images. *Id*. at 27 (¶82). Dr. Kia made the same findings with respect to Mazess and Cann 1890. *Id*. at 27-28 (¶¶83-84). There are therefore genuine issues of material fact in dispute as to whether the prior art discloses various claim limitations.

There are also genuine issues with respect to the motivation to combine the references. For example, Dr. Kia opined that "because of differences in the processes and hardware associated with each of these technologies, one skilled in the art at the relevant time would not look to BMD for a solution to any problem" in non-BMD fields. *Id*. at 21-22 (¶66), *see also, id.* at 25 (¶77), 28 (¶85). Planmeca's Opening Brief is silent on this issue. Accordingly, not only is this another genuine issue of material fact in dispute, Planmeca also has not satisfied its burden with respect to obviousness, which precludes summary judgement on invalidity over the prior art.

Additionally, Planmeca's motion for summary judgement is premised on opinions by Dr. Pelc whose reliability is in dispute. As stated above and in Osseo's motion to

17

exclude (D.I. 104), Dr. Pelc urged theories of obviousness that purposely disregard the Court's constructions. *See, e.g.,* Ex. A at 76-77 (¶¶189-190), 80 (¶198), 84-58 (¶¶208-209), 106 (¶261), and 174 (¶430). ███████████████

████████████████  ████████████████  ████████████

██████████████████████████████████████████████████

██████████████████████████████  █████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████ Finally, Dr. Pelc's testimony showed that he did not comprehend at the time of his reports the requirement for proving obviousness that the prior art must be considered as a whole, including statements that may "criticize, discredit, or otherwise discourage investigation into the invention claimed." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 567 F. 3d 1314, 1327 (Fed. Cir 2009) (citation omitted); *MEDICHEM, SA v. ROLABO, SL*, 437 F. 3d 1157, 1165-66 (Fed. Cir. 2006) ("Where the prior art contains apparently conflicting teachings (i.e., where some references teach the combination and others teach away from it) each reference must be considered for its power to suggest solutions to an artisan of ordinary skill considering the degree to which one reference might accurately discredit another.") (internal quotations omitted). ███████████████████████

███████████████████████████████████  ████

███████████████████████████

## VI.     <u>Conclusion</u>

In view of the forgoing, Planmeca has not shown that there is no genuine issue of material fact regarding infringement and invalidity over the prior art.  Indeed, the Parties' experts do not agree on any of the material issues of fact, as discussed above, effectively precluding disposition of this case at this stage.  For these reasons, Planmeca's motion for summary judgement must be denied on all grounds.