IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OSSEO IMAGING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 17-1386 (LPS) (CJB) |
| | ) |
| PLANMECA USA INC., | ) REDACTED - PUBLIC VERSION |
| | ) |
| Defendant. | ) |

**PLANMECA'S[1] REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
OF NO INFRINGEMENT AND INVALIDITY IN VIEW OF PRIOR ART**

OF COUNSEL:

Wasif H. Qureshi
Leisa Talbert Peschel
David K. Wooten
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX  77010
(713) 752-4200

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Planmeca USA Inc.*

Original Filing Date: October 18, 2019
Redacted Filing Date: October 24, 2019

---

[1]  "Planmeca" refers to Defendant Planmeca USA Inc. "Osseo" refers to Plaintiff Osseo Imaging, LLC.

## **TABLE OF CONTENTS**

Table of Authorities ......................................................................................................................... iii

I. Introduction ........................................................................................................................ 1

II. Nothing Raised in Osseo's Opposition Precludes Summary Judgment of No Infringement and/or Invalidity ........................................................................................... 1

    A. Osseo's Opposition to Summary Judgment of No Infringement Relies on the False Premise That HU Values are Quantitative Calculations of Bone Density ....... 1

        1. HU values are not bone density ....................................................................... 1

        2. Dr. Pelc did not add an accuracy requirement to "densitometry" .................... 2

        3. As used in Planmeca's product manuals, density refers to a user's impression of grayscale images ......................................................................... 4

    B. Dr. Kia Failed to Provide Any Particularized Testimony Regarding Infringement Under The Doctrine of Equivalents ...................................................... 5

    C. There is No Genuine Issue of Material Fact Regarding Obviousness ....................... 6

III. Conclusion .......................................................................................................................... 7

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Federal Cases**

*AquaTex Indus. v. Techniche Soln's*,
   479 F.3d 1320 (Fed. Cir. 2007)................................................................................................5

I.      INTRODUCTION

Osseo's Response and Dr. Kia's reports repeatedly substitute the words "quantitative density measurements of bone" or "bone density" when discussing HU values of the Accused Systems. *See, e.g.*, D.I. 116 at 4. Quite simply, Osseo is attempting to create a fact issue where none exists. Based on this substitution, Osseo argues the Accused Systems "unquestionably quantitatively calculate bone density." D.I. 116 at 8. Exactly the opposite is true. Proper application of the Court's construction for "densitometry" reveals Osseo has not raised any genuine issue of material fact. The HU values of the Accused Systems are not quantitative calculations of bone density, and therefore summary judgment of noninfringement is appropriate. Furthermore, Dr. Kia did not provide the particularized testimony and linking argument necessary to avoid summary judgment on Osseo's doctrine of equivalents argument. Nor did Osseo raise any genuine issue on obviousness.

II.     **NOTHING RAISED IN OSSEO'S OPPOSITION PRECLUDES SUMMARY JUDGMENT OF NO INFRINGEMENT AND/OR INVALIDITY**

   A.   **Osseo's Opposition to Summary Judgment of No Infringement Relies on the False Premise That HU Values are Quantitative Calculations of Bone Density**

        1.      **HU values are not bone density**

As admitted by Osseo and Dr. Kia, HU values are not quantitative calculations of bone density and thus literally cannot meet the "densitometry" requirement of all the Asserted Claims. *See, e.g.*, D.I. 116 at 10 ("HU values ***relate to*** the physical density of the material;" "***a function*** of density" (emphasis added)). An HU value reflects the attenuation of x-rays through an object that is calculated by scaling the linear attenuation coefficient of the object scanned to the attenuation coefficients of air and water. D.I. 117, Ex. G at ¶ 50. Osseo only refers to HU values as relating to or as a function of density because attenuation depends on a number of factors—the x-ray photon energy used in scanning, the material's elemental composition, and the material's

1

density.  D.I. 117, Ex. F at ¶ 143.

Osseo refers in several places to the implant verification submodule, an optional software feature of the Accused Systems, to oppose summary judgment of noninfringement.  D.I. 116 at 8–9.  Analysis of the evidence cited makes clear that the implant verification submodule merely displays HU values and the user uses the grayscale image and/or those HU values to evaluate the implant site.  *See* D.I. 116 at 8 (citing D.I. 117, Ex. I at 224–225) and 9 (citing to Dr. Kia's report).  However, to raise a genuine issue of material fact, those HU values would have to be quantitative calculations of bone density, which they are not.

### 2. Dr. Pelc did not add an accuracy requirement to "densitometry"

Osseo continues to erroneously assert that Dr. Pelc added an accuracy requirement to the Court's densitometry construction.  D.I. 116 at 1–2, 4–5, and 9–10.  The Court's construction requires that the item that is quantitatively calculated is bone density, not a measurement of some other physical property.  D.I. 44 at 9.  In construing the term, the Court resolved the parties' dispute about whether the specific BMD calculation mentioned in the specification was required:

> In the Court's view, densitometry is not limited to BMD, a point Defendant appears to concede.  (*See* Tr. at 43) ("[W]hereas Osseo is saying, well . . . densitometry just merely has to relate to density, our construction, **whether it is BMD or density information**, is that **there must be a calculated density**.") (emphasis added)[.] Consistent with what has already been stated, the Court concludes **the patent limits densitometry to a quantitative form of bone density**, but not to one particular type of calculation.

D.I. 44 at 9–10 (bold underlining added).  The Court also rejected Plaintiff's position that densitometry "relates generally to density and can be used to qualitatively compare scans" such as by color-coding or grayscale representations.  D.I. 44 at 8.  Dr. Pelc's discussions of accuracy related to discussing prior art and rebutting Osseo's attempted substitution of HU values for the required bone density.  *See* D.I. 117, Ex. F at 41–44, 49–52, 74, 77–79, 81–87 (Dr. Pelc's report as cited by Osseo as discussing "accuracy" at D.I. 116 at 4 and 9–10); *see also* D.I. 115 at 4–5,

8–10 (Planmeca's opposition to Osseo's motion to exclude Dr. Pelc which addresses in detail his statements using the word "accuracy"). For example, Osseo cites paragraph 111 of Dr. Pelc's Rebuttal Noninfringement Report as support for the argument that "Dr. Pelc's non-infringement opinions were thus premised on a requirement that the Accused Products '*accurately* quantify[] bone mineral density. . . .'" D.I. 116 at 4. Paragraph 111 discusses the history of prior art attempts at densitometry and concludes with the statement: "[a]ccurately quantifying bone mineral density with photons must avoid all these problems." D.I. 117, Ex. F at 43. That is not imposing an accuracy requirement on the claimed densitometry. Dr. Pelc did not add an accuracy requirement to the Court's construction—he was faithfully applying the Court's construction that to meet the densitometry requirement, the item quantitatively calculated must be bone density, not some other physical property measurement. And there is no dispute as to what HU values measure. Both Dr. Kia and Dr. Pelc agree that HU values are measurements of the linear attenuation of radiation (x-rays) through a scanned object that are scaled for the linear attenuations of air and water. *See* D.I. 95-1, Ex. A, ¶ 50 and Ex. D, ¶¶ 18, 25.

Further, Osseo's arguments regarding Dr. Pelc's deposition testimony are irrelevant. D.I. 116 at 10 (citing 122:12–124:6, 163:11–18, 164:16–166:12); *see also* D.I. 115 at 5, 9–10 (refuting Osseo's characterizations of the testimony in detail). Dr. Pelc's testimony regarding accuracy responded to hypotheticals raised by Osseo's counsel ███████████████████████████████████████████████████████████████████████████████████████████████████████ *See* cited testimony and D.I. 115, Ex. B at 122:2–11, 122:21–123:18, 163:11–18, 164:16–166:12. Further, Dr. Pelc is a qualified expert that clearly exceeds both parties' definitions of one of skill

3

in the art, which does not limit relevant imaging experience to dentistry.[2]  *See, e.g.,* D.I. 115, Ex. A (Dr. Pelc's CV) and Ex. C at 5–6 (¶ 15) (Dr. Kia's definition of one of skill in the art); *see also* D.I. 115 at 5–6 (discussing Dr. Pelc's qualifications in greater detail).

### 3. As used in Planmeca's product manuals, density refers to a user's impression of grayscale images

Osseo cites a number of pages in one product manual to argue Planmeca uses "the terms HU/GV synonymously with density." D.I. 116 at 10–11.  Not only is that insufficient to prove infringement, but closer analysis of the direct evidence reveals important context.  Osseo quotes an excerpt from page 5 that uses the phrase "bone density measurements" but neglects to point out that reference is to the fact that imaging processing done by the Accused Systems could affect the reliability of any later bone density measurements made by the user from the produced images with the help of a calibration step wedge (***not part of or done by*** the Accused Systems).  D.I. 116 at 1; *id.*, Ex. I at 5 (part of the Introduction).  That is not evidence the Accused Systems perform densitometry but rather an acknowledgement that the measurements the Accused Systems do make are not bone density measurements.  Osseo further cites pages 165, 176, and 177, all of which are referring to the user making an inference about density from the grayscale image.  D.I. 116, Ex. I at 165, 175, 177.  Indeed, as to pages 176–177, the user is asked to choose an area of interest (referred to as density) and the referenced measurements are to "approximate the area and volume of an arbitrary anatomical region of uniform density (grey scale values)." *Id.* at 176.  That is not a calculation of density, and as noted above, inferences of density from grayscale images are not sufficient to meet the Court's construction of densitometry.

---

[2]  In addition, Dr. Pelc noted in his deposition that he did have experience applicable to dentistry.  *See* D.I. 115, Ex. B at 19:18–22:14, 26:21–27:6, 29:5–30:14, and 45:21–46:10.

### B. Dr. Kia Failed to Provide Any Particularized Testimony Regarding Infringement Under The Doctrine of Equivalents

Contrary to Osseo's argument (D.I. 116 at 12–14) and as explained in Planmeca's Motion (D.I. 94, 95), Dr. Kia did not provide "particularized testimony and linking argument explaining how the differences between HU values calculated by the Accused [Systems] and "densitometry" are insubstantial." *See* D.I. 116 at 14 (Osseo's quoted argument); *see also AquaTex Indus. v. Techniche Soln's*, 479 F.3d 1320, 1328–29 (Fed. Cir. 2007) (requiring particularized testimony and linking argument from the perspective of one of skill in the art). In the Kia Infringement Report, Dr. Kia explained his theory of literal infringement and then in paragraph 63 expressed a heads I win-tails you lose doctrine of equivalents argument without any explanation of why the differences between using HU values and quantitative calculations of bone density would be insubstantial. *See* D.I. 95, Ex. A, ¶ 63. ████████████████

████████████████████████████████

████████████████

████████

*Id.* Osseo claims that Dr. Kia's mere citation to his prior literal infringement analysis fills in the gap for particularized testimony and linking argument (D.I. 116 at 13); however, that cannot be the case given that his prior analysis argued there were no differences. This simply is not a credibility dispute—Dr. Kia failed to provide a legally viable opinion with respect to the "densitometry" limitation, and therefore summary judgment of no infringement under the doctrine of equivalents is appropriate.

Further, Osseo's arguments on ensnarement are unpersuasive for the same reasons as Osseo's underlying arguments on literal infringement, infringement under the doctrine of

equivalents, and invalidity and are thus insufficient to avoid summary judgment. D.I. 116 at 15.

### C. There is No Genuine Issue of Material Fact Regarding Obviousness

None of the issues raised by Osseo—merging, comparing, and motivations to combine—preclude summary judgment of invalidity for obviousness because analysis of the actual record undermines Osseo's arguments. With respect to prior art issues, the Kia Validity Report focused almost entirely on a rebuttal to Dr. Pelc's obviousness opinions with respect to the Webber reference, including some discussion regarding references combined with Webber.[3] *See generally* D.I. 117, Ex. C at ¶¶ 59–85. Dr. Kia did not undertake the same analysis with respect to the other primary prior art references and merely stated they did not disclose the merging requirement. *See id.* at ¶ 75. Osseo misleadingly argues that Dr. Pelc did not dispute that conclusory statement. D.I. 116 at 15–16. Dr. Pelc extensively detailed what references met the merging requirement of the Tomographic Model(s) claim terms in his reports and why there would have been a motivation to combine the references. *See* D.I. 95, Ex. D ¶¶ 110, 135, 56–166 (consolidating applicable paragraphs of Dr. Pelc's reports regarding merging). Further, Dr. Pelc did not rely on Cann 1980 solely for the comparing limitation and did not raise it for the first time in his declaration (*see* D.I. 116 at 16)—in his Opening Invalidity Report, Dr. Pelc explained merging in Cann 1980 as part of his discussion regarding a dual energy limitation and then later referred back to that discussion with respect to densitometry and Tomographic Model(s), including discussions of motivations to combine. D.I. 95, Ex. D at ¶¶ 150, 155, 159–160 (referencing "prior art disclosing Dual Energy Densitometry methods as described above"); *see also* D.I. 117, Ex. A at ¶¶ 221, 223 (discussing that Cann 1980 discloses dual energy densitometry methods as a combination with Guenther). Contrary to Osseo's argument, Dr. Pelc

---

[3]   Planmeca has not withdrawn its obviousness argument with respect to Webber but merely chose not to use Webber in its summary judgment motion. *See* D.I. 116 at 16.

6

also detailed how the comparing limitations of certain Asserted Claims were met by the prior art. D.I. 95, Ex. D at ¶¶ 177–181; *compare* D.I. 116 at 17 (Osseo argument). Osseo cites paragraph 66 of Dr. Kia's report in an attempt to create a fact issue on a motivation to combine; however, that paragraph concerns ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇t—that is irrelevant to summary judgment grounds that do not rely on Webber. D.I. 117, Ex. C at ¶ 66.

### III. CONCLUSION

For the foregoing reasons and those raised in Planmeca's Motion, Planmeca respectfully requests that the Court enter summary judgment of no infringement and invalidity.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Planmeca USA Inc.*

OF COUNSEL:

Wasif H. Qureshi
Leisa Talbert Peschel
David K. Wooten
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX  77010
(713) 752-4200

October 18, 2019

7