IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OSSEO IMAGING, LLC,

Plaintiff,

vs.

PLANMECA USA INC.,

Defendant.

**C.A. NO. 1:17-CV-01386-JFB**

**INITIAL JURY INSTRUCTIONS**

**INSTRUCTION NO. 1**

**INTRODUCTION**

Members of the jury: Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

These instructions are intended to introduce you to the case and the law that you will apply to the evidence that you will hear.  I will give you more detailed instructions on the law at the end of the trial.  Also, because this is a patent trial which will deal with subject matter that is not within the everyday experience of most of us, I will additionally give you some preliminary instructions regarding patents to assist you in discharging your duties as jurors.

I expect that your commitment as jurors will last approximately five business days, through August 26, 2022.

**INSTRUCTION NO. 2**

**THE PARTIES AND THEIR CONTENTIONS**

This is a patent case.

The plaintiff in this case is Osseo Imaging, LLC. I will refer to the plaintiff as "Osseo" or "Plaintiff."  The defendant in this case is Planmeca USA Inc., which I will refer to as "Planmeca" or "Defendant."

There are three patents at issue in this case: (1) United States Patent No. 6,381,301; (2) United States Patent No. 6,944,262; and (3) United States Patent No. 8,498,374.  Because these numbers are so long, patents are usually referred to by their last three digits.  For example, you may hear the lawyers and witnesses in the case refer to Osseo's patents as the '301 Patent, the '262 Patent, and the '374 Patent.  You may also hear these three patents collectively referred to as the "Osseo Patents" or the "Asserted Patents."  Copies of the '301 Patent, the '262 Patent, and the '374 Patent will be provided to you along with these preliminary instructions.

Osseo contends that Planmeca directly infringed certain claims of the '301 Patent, the '262 Patent, and the '374 Patent by making, using, selling, offering to sell within, or importing into the United States certain systems that are accused of infringement.  Osseo carries the burden of proof.

The claims which Osseo contends that Planmeca has infringed are:

- Claims 1 and 7 of the '301 Patent;

- Claim 1 of the '262 Patent; and

- Claims 1 and 6 of the '374 Patent.

2

These specific claims may be referred to collectively as the "Osseo patent claims" or the "Asserted Claims." Although I, as the Court, and the parties may refer to the claims collectively, you must conduct your infringement analysis with respect to each of the Asserted Claims in each of the Asserted Patents, i.e., on a claim-by-claim basis.

The systems that Osseo has accused of infringing the Asserted Claims include the following ProMax imaging systems:

- 3Ds/3D;

- 3Ds/3D Classic;

- 3D Plus;

- 3D Mid; and

- 3D Max

(collectively "ProMax 3D Imaging Systems") in combination with the Romexis software. The ProMax 3D Imaging Systems in combination with Romexis software may be referred to as the "Accused Systems." If you decide that one or more of the Asserted Claims have been infringed by Planmeca, Osseo also contends that it is entitled to damages as compensation for Planmeca's infringement.

Planmeca denies that it has infringed any of the Asserted Claims of the '301 Patent, the '262 Patent, and the '374 Patent. Non-infringement is a defense to Osseo's allegations and assertions of infringement. Planmeca further denies that it has willfully infringed any Asserted Claim of the Asserted Patents.

Planmeca also contends that each Asserted Claim of the '301 Patent, the '262 Patent, and the '374 Patent is invalid for several independent reasons. Planmeca carries the burden of proof. Invalidity of the asserted patent claims is a defense to infringement.

The fact that the Patent Office grants a patent does not necessarily mean that any invention claimed in the patent deserves the protection of a patent. For example, the Patent Office may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Patent examiners have a lot of work to do. No process is perfect. Therefore, even though a patent examiner allowed each of the Asserted Claims, it will be up to you, the jury, to decide whether the Asserted Claims are, in fact, invalid.

You may find a patent claim to be invalid for a number of reasons, including because:

1. it claims subject matter that is not new;

2. it claims subject matter that is obvious;

3. the patent fails to satisfy the enablement requirement; and

4. the patent fails to satisfy the written-description requirement.

Invalidity must be determined on a claim-by-claim basis. Planmeca also denies that Osseo is entitled to recover any damages related to the '301 Patent, the '262 Patent, and the '374 Patent.

I will explain to you the meaning of these contentions in a moment, but first I will explain your duties as jurors and explain aspects of the United States patent system.

## INSTRUCTION NO. 3

## DUTIES OF THE JURY

Let me now turn to the general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find what the facts are from the evidence as presented at the trial.  You and you alone will be the judges of the facts.  You will have to apply those facts to the law as I will instruct you at the close of the evidence.  You must follow that law whether you agree with it or not.

In addition to instructing you about the law, I will provide you with instructions as to what the Asserted Claims of the patents mean.  You are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them.  All the instructions are important, and you should consider them together as a whole.

You are the judges of the facts.  I will decide which rules of law apply to this case.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.  Also, do not let anything I say or do during the course of the trial influence you.  Nothing I say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**INSTRUCTION NO. 4**

**EVIDENCE GENERALLY**

The evidence from which you will find the facts consists of the following:

1. The testimony of witnesses.

2. Documents and other things admitted into evidence.

3. Any facts that are stipulated—that is, formally agreed to by the parties.

4. Any facts that are judicially noticed—that is, facts I say you must accept as true.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered are not admissible under the rules of evidence. You should not be influenced by a lawyer's objection or by my ruling on the objection. If I sustain or uphold the objection and find the matter is not admissible, you should ignore the question or document. If I overrule an objection and allow the matter in evidence, you should treat the testimony or document like any evidence. If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only. If this occurs during the trial, I will try to clarify this for you at that time.

3. Any testimony I exclude or tell you to disregard is not evidence.

4. During trial you will be shown charts and animations to help illustrate the testimony of the witnesses. These illustrative exhibits, called "demonstrative exhibits," are not admitted into evidence and should not be considered as evidence.

6

5. Anything you see or hear outside the courtroom is not evidence and must be disregarded.  You must make your decision based only on the evidence that you see and hear in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**INSTRUCTION NO. 5**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is direct proof of a fact, such as the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## INSTRUCTION NO. 6

## CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of each witness's credibility. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says, or part of it, or none of it. In deciding what to believe, you may consider a number of factors, including the following:

1. the quality of the witness's understanding and memory;

2. the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

3. how reasonable or unreasonable the testimony is when considered in the light of other evidence that you believe;

4. whether the witness's testimony is consistent or inconsistent;

5. whether the witness's testimony has been contradicted;

6. the witness's biases, prejudices, or interests;

7. the witness's manner or demeanor on the witness stand; and

8. all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

The parties may present the testimony of a witness by having the witness here live for you. Witnesses may also testify by reading from a deposition transcript or by playing excerpts from a video deposition.

You should understand that you will not hear testimony from a witness where the witness is not or was not under oath. If witness testimony is provided to you, it is under oath. If they are appearing by video, they will be sworn in. If you are hearing a videotaped deposition, the testimony was provided after the witness was sworn in.

All witness testimony is entitled to the same consideration regardless of whether it is here live, by video conference, or by videotaped deposition. However, it is presented to you, it is entitled to the same consideration and determination of credibility by you. You should not hold the quality of the video or the location or anything like that against any witness who is appearing other than live here.

That being said, it is exclusively in your province to believe every word that any witness says, or to disregard anything they say or do, because you all are the exclusive jurors and judges of facts in this case.

**INSTRUCTION NO. 7**

**EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

**INSTRUCTION NO. 8**

**USE OF DEPOSITION TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

The depositions of certain witnesses, which were taken previously, may be played for you.  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

**INSTRUCTION NO. 9**

**BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."

A party asserting patent infringement, in this case Osseo, has the burden of proving infringement by a preponderance of the evidence.  That means the party asserting infringement has to produce evidence that, when considered in light of all the facts, leads you to believe that what that party claims, is more likely true than not.  To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party asserting infringement must make the scales tip somewhat on its side.  Osseo also has the burden to establish the amount of damages it seeks by a preponderance of the evidence.

A patent is presumed to be valid.  A party challenging the validity of a patent, in this case Planmeca, has the burden of proving by clear and convincing evidence that the patent is invalid.  Clear and convincing evidence means that it is highly probable the fact is true.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt."  That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one.  You should therefore not consider it in this case.

**INSTRUCTION NO. 10**

**PATENT VIDEO**

At this time, we are going to show a 17-minute video as an introduction to the patent system.  It contains background information to help you understand what patents are, why they are needed, the role of the Patent Office, and why disputes over patents arise.  This was prepared by the government, not by the parties.  Therefore, the video addresses issues that are not necessarily going to be presented as issues for you to decide in this case.

The video refers to a "sample patent" that you have been provided.  The Court will not provide a sample patent.  Instead, I ask that you simply follow along with the video.

Many of the terms that are used in the video are contained in a Glossary of Patent Terms in your notebooks.  Please feel free to refer to this Glossary throughout the trial.

**INSTRUCTION NO. 11**

**CLAIM CONSTRUCTION**

It is the claims of a patent (the numbered paragraphs at the end of the patent) that define the invention.  Sometimes the words or phrases of the claims need to be further defined or interpreted.  This has been done already in this case, and a copy of those definitions is included in your juror notebooks.  You must accept the definition of these words or phrases in the claims as correct.  For any words or phrases in the claim for which you have not been provided with a definition, you should apply their common meaning.

You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

## INSTRUCTION NO. 12

## CONDUCT OF THE JURY

Now a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case, not even among yourselves.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about the case, bring it to the Court's attention promptly.

Second, do not read or listen to anything touching on this case that is not admitted into evidence.  By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report.

Third, do not try to do any research or make any investigation about the case on your own.

Let me elaborate.  During the course of the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, social media, or any other electronic means.  It is important that you decide this case based solely on the evidence

presented in the courtroom.  Please do not try to find out information from any other sources outside the confines of this courtroom.

I know that many of you use cell phones, the internet, social media, and other tools of technology.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.

You may not communicate with anyone about the case including on your cell phone or through e-mail, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, LinkedIn, YouTube, Instagram, or Snapchat.

Finally, do not reach any conclusion on the claims or defenses until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

**INSTRUCTION NO. 13**

**JURY NOTEBOOKS AND NOTE-TAKING BY JURORS**

I will now instruct the court security officer to pass out your juror notebooks.

I ask that you write your name on your notebook.  It is important that we not get them confused.  These notebooks include:

1. a copy of the '301 Patent, the '262 Patent, and the '374 Patent;

2. the Court's claim constructions for the '301 Patent, the '262 Patent, and the '374 Patent;

3. glossary of patent terms; and

4. blank sheets of paper for notetaking, if you so choose.

These materials have been jointly submitted by the parties.  During the trial, you may, but are not required to, take notes regarding testimony; for example, exhibit numbers, impressions of witnesses, or other things related to the proceedings.

A word of caution is in order.  There is generally I think a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Also, keep in mind that you will not have a transcript of the testimony to review.

So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

You must leave these notebooks, including any handwritten notes that you take, in the jury deliberation room which is secured at the end of each day.  And, remember that they are for your own personal use.  At the conclusion of this trial, your notes will be collected and destroyed without review.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**INSTRUCTION NO. 14**

**BENCH CONFERENCES (SIDEBARS)**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference, which is also called a sidebar. If that happens, please be patient. We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. If you would like to stand or stretch or walk around the jury box while we are at sidebar, you should feel free to do so.

I may not always grant an attorney's request for a sidebar. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## INSTRUCTION NO. 15

## COURSE OF THE TRIAL

As soon as I finish reading these instructions, the trial will proceed in the following manner: First, Osseo may make an opening statement outlining its case. Then Planmeca may make an opening statement outlining its case. Opening statements are not evidence; their only purpose is to help you understand what each party expects the evidence to show.

After the attorneys have made their opening statements, each party is given an opportunity to present its evidence. Osseo goes first because it has the burden of proof on infringement. Osseo will present evidence and witnesses that it believes supports its claims of infringement, willfulness, and damages. When Osseo is finished, Planmeca will have the opportunity to offer evidence to defend against Osseo's claims and to introduce evidence and witnesses on its claim that the Asserted Claims of the '301 Patent, the '262 Patent, and the '374 Patent are invalid. When Planmeca is finished, Osseo will have the opportunity to introduce rebuttal evidence relating to invalidity.

After all of the evidence has been presented, I will instruct you on the law and then the lawyers will present to you closing arguments. As with opening statements, the closing arguments are not evidence. Their purpose is to summarize and interpret the evidence for you in a way that is helpful to their clients' positions. After closing arguments, you will retire to the jury room to deliberate on your verdict in this case.

**INSTRUCTION NO. 16**

**TRIAL SCHEDULE**

Though you have heard me say this during the jury selection process, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 5 business days to try, between now and August 26, which is Friday.

We will normally begin the day at 9:00 A.M. We will be here each day until 4:30 P.M. There will be at least one break every morning and at least one break every afternoon. There will also be a lunch break each day – and every day after today we will be able to order lunch for you. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. At that point, you will be permitted to deliberate as late as you wish.

Finally, please understand that this is a timed trial. That means I have allocated each party a maximum number of hours in which to present all portions of its case. This allows me to assure you that we expect to be completed with this case by Friday, August 26. Of course, you can help me keep on schedule by being here promptly each morning and being ready to proceed at the end of each break.

I told you when I intend to take breaks and how often I aim to take breaks, but if any of you need an additional break at any time, that is fine. You just need to get my attention or my deputy's attention. That can be done usually by waving or raising a hand or, if need be, standing. So, if you need a break for any reason at any other time, please just get our attention.

22