IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OSSEO IMAGING, LLC,

            Plaintiff,

vs.

PLANMECA USA INC.,

            Defendant.

**C.A. NO. 1:17-CV-01386-JFB**

**CLOSING JURY INSTRUCTIONS**

**INSTRUCTION NO.  17**

**INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

**INSTRUCTION NO. 18**

**JURORS' DUTIES**

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

**INSTRUCTION NO. 19**

**EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  You should not be influenced by a lawyer's objection or by my ruling on that objection.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes, I may have ordered you to disregard things that you saw or heard, or that I struck from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an

exhibit might have I shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**INSTRUCTION NO. 20**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is direct proof of a fact, such as the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**INSTRUCTION NO. 21**

**CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**INSTRUCTION NO. 22**

**STATEMENTS OF COUNSEL**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

**INSTRUCTION NO. 23**

**CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says, or part of it, or none of it. In deciding what to believe, you may consider a number of factors, including the following:

1.  the quality of the witness's understanding and memory;

2.  the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

3.  how reasonable or unreasonable the testimony is when considered in the light of other evidence that you believe;

4.  whether the witness's testimony is consistent or inconsistent;

5.  whether the witness's testimony has been contradicted;

6.  the witness's biases, prejudices, or interests;

7.  the witness's manner or demeanor on the witness stand; and

8.  all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**INSTRUCTION NO. 24**

**NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**INSTRUCTION NO. 25**

**EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**INSTRUCTION NO. 26**

**DEPOSITION TESTIMONY**

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript.

**INSTRUCTION NO. 27**

**DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence.  It is a party's description, picture, or model used to describe something involved in this trial. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**INSTRUCTION NO. 28**

**BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." The burden of proof in this case is on Osseo for some issues and on Planmeca for other issues. In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

For any issue on which a party bears the burden of proof by a preponderance of the evidence, that party has carried its burden if you find that what the party claims is more likely true than not, when considered in light of all the evidence. To put it differently, if you were to put each party's evidence on the opposite sides of a scale, the evidence supporting the party with the burden of proof would have to make the scales tip somewhat on the side of that party.

Here, Osseo has alleged that Planmeca has infringed the asserted claims of: (1) United States Patent No. 6,381,301 ("'301 Patent"); (2) United States Patent No. 6,944,262 ("'262 Patent"); and (3) United States Patent No. 8,498,374 ("'374 Patent"). Osseo also alleges that it is entitled to damages to compensate it for any infringement. Osseo has the burden of proving these allegations by a preponderance of the evidence.

For any issue on which a party bears the burden of proof by clear and convincing evidence, that party has carried its burden if you find that what the party claims is highly probable when considered in light of all of the evidence. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Here, Planmeca has alleged that the asserted claims of the '301 Patent, '262 Patent, '374 Patent are invalid. Planmeca has the burden of proving these allegations by clear and convincing evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

**INSTRUCTION NO. 29**

**USE OF NOTES**

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency I think to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**INSTRUCTION NO. 30**

**SUMMARY OF THE PATENT ISSUES**

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations. The specific questions you must answer are listed on the verdict sheet you will be given. Here are the issues you must decide:

1. Whether Osseo has proven by a preponderance of the evidence that Planmeca directly infringed one or more of the Asserted Claims of the '301 Patent, the '262 Patent, or the '374 Patent;

2. Whether Planmeca has proven by clear and convincing evidence that one or more of the Asserted Claims of the '301 Patent, the '262 Patent, or the '374 Patent are invalid; and

3. If you decide that Osseo has proven that Planmeca infringed a claim not shown to be invalid, you will decide the money damages to be awarded to compensate Osseo for that infringement. Osseo has the burden to establish the amount of its damages by a preponderance of the evidence.

I will provide more detailed instructions on each of the issues you must decide throughout elsewhere in these jury instructions.

**INSTRUCTION NO. 31**

**PATENT CLAIMS GENERALLY**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instruction about the patent laws that specifically relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

Throughout the trial, and in my instructions, you have heard much about patent "claims" and the "Asserted Claims." The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed.

The claims are intended to define, in words, the bounds of the invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the Asserted Claims must be considered individually.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue are each separate limitations of the claim. When a thing (such as a product) meets each and every requirement of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of the claim.

Each claim may cover more or less than another claim.  Therefore, what a patent covers, depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

**INSTRUCTION NO. 32**

**CONSTRUCTION OF THE CLAIMS**

It is the Court's duty under the law to define what the patent claims mean. As I instructed you at the beginning of the case, I have made my determinations, and I will now instruct you on the meaning, or "construction," of the claim terms. You must apply the meaning that I give in each patent claim to decide if the claim is infringed or invalid. You must accept my definitions of these words in the claims as being correct. You must ignore any different definitions used by the witnesses or the attorneys.

For the Asserted Claims in this case, you are advised that the following definitions must be applied:

| Claim Term | Court's Construction |
|---|---|
| **tomographically modeling / tomographic model(s) / tomographical model(s)** <br> (Claim 1 of the '301 Patent and claims 1 and 6 of the '374 Patent) | merging information from multiple tomographic scans of an object to produce a representation of the subject / said representation depicting quantitative density differences of the object scanned, which is created by the microprocessor in the controller using densitometry from at least one focal plane |
| **tomographic dental / orthopedic densitometry model / tomographical densitometry model** <br> (Claims 1 and 7 of the '301 Patent) | merging information from multiple tomographic scans of an object to produce a representation of the subject / said representation depicting quantitative density differences of the object scanned, which is created by the microprocessor in the controller using densitometry from at least one focal plane |
| **densitometry** <br> (Claims 1 and 7 of the '301 Patent and claim 1 of the '262 Patent) | quantitatively calculated bone density |
| **conversion means** <br> (Claim 1 of the '301 Patent) | means-plus-function limitation |

| | Function: converting a signal from the detector array<br>Structure: an analog-to-digital converter |
|---|---|
| **a controller**<br>(Claim 1 of the '301 Patent and claims 1 and 6 of the '374 Patent) | one or more controllers, no construction necessary for the term controller |
| **means for storing a preexisting tomographical dental / orthopedic densitometry model**<br>(Claim 1 of the '301 Patent) | means-plus-function limitation<br>Function: storing a pre-existing tomographical dental / orthopedic densitometry model<br>Structure: computer memory |
| **an output device connected to said microprocessor and adapted for receiving a tomographic model / tomographical densitometry model from said microprocessor**<br>(Claim 1 of the '301 Patent) | one or more output devices connected to said microprocessor and adapted for receiving a tomographic model / tomographical densitometry model from said microprocessor |
| **preexisting patient model/current patient model**<br>(Claim 1 of the '374 Patent) | a pair of tomographic models obtained during different imaging sessions, the earlier or preexisting model for use as a baseline for comparing with a later or then current patient model |
| **movable in response to from said microprocessor**<br>(Claim 1 of the '301 Patent) | movable in response to signals from said microprocessor |

For any words in a claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of such word to a person of ordinary skill in the art.

**INSTRUCTION NO. 33**

**INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of claims: independent claims and dependent claims.

An "independent claim" does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order to be covered by that claim. In other words, an independent claim is read separately to determine its scope. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. Of the Asserted Claims in this case, claim 1 of the '301 Patent, claim 1 of the '262 Patent, and claim 1 of the '374 Patent are independent claims.

The remainder of the Asserted Claims in the Osseo Patents are dependent claims. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the requirements of the claims to which it refers. The dependent claim then adds additional requirements. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim to which it refers. In this case, asserted claim 7 of the '301 Patent is a dependent claim as this claim refers to independent claim 1 and asserted claim 6 of the '374 Patent is a dependent claim as this claim refers to independent claim 1. Accordingly, the words of claims 1 and 7 are read together to determine what claim 7 of the '301 Patent covers and the words of claim 1 and 6 are read together to determine what claim 6 of the '374 Patent.

**INSTRUCTION NO. 34**

**OPENED ENDED OR "COMPRISING" CLAIMS**

The beginning portion, or preamble, of several of the Asserted Claims has the word "comprising."  The word "comprising" means "including the following but not excluding others."  A claim that uses the word "comprising" or "including" is not limited to products having only the elements that are recited in the claim, but also covers products that have additional elements.

If you find, for example, that the products accused of infringement include all of the elements of a particular claim, the fact that the products include additional elements would not avoid infringement of the claim.

**INSTRUCTION NO. 35**

**INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether Osseo has proven by a preponderance of the evidence that Planmeca has infringed any of the Asserted Claims (defined below) of the '301, '262, and '374 Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another. You may also find that none of the claims are infringed. Recall that Osseo must prove infringement by a preponderance of the evidence, i.e., that it is more likely than not that infringement has occurred.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. Here, the claims which Osseo contends that Planmeca has infringed are:

- Claims 1 and 7 of the '301 Patent;

- Claim 1 of the '262 Patent; and

- Claims 1 and 6 of the '374 Patent.

These specific claims may be referred to collectively as the "Osseo patent claims" or the "Asserted Claims."

You must compare each of the Asserted Claims, as I have defined them, to the systems Osseo accused of infringement. The systems that Osseo contends have infringed the Asserted Claims include the following Promax imaging systems:

- 3Ds/3D;

- 3Ds/3D Classic;

- 3D Plus;

- 3D Mid; and

- 3D Max

(collectively "ProMax 3D Imaging Systems") in combination with the Romexis software. The ProMax 3D Imaging Systems in combination with Romexis software may be referred to as the "Accused Systems." You should not compare the Accused Systems with any specific examples set out in the Asserted Patents. The only correct comparison is between the Accused Systems and the language of the claim itself, as I have explained its meaning to you.

You must consider each of the Asserted Claims individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

**INSTRUCTION NO. 36**

**DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT**

In order to prove direct infringement by literal infringement, Osseo must prove by a preponderance of the evidence that Planmeca made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of Osseo during the time the Asserted Patents were in force. You must compare the Accused Systems with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that an independent claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused System meets the additional requirement(s) of any claims that depend on the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

## INSTRUCTION NO. 37

## INVALIDITY GENERALLY

Patent invalidity is a defense to patent infringement.  The granting of a patent by the United States Patent and Trademark office carries with it the presumption that the patent is valid.  The law presumes that the Patent and Trademark Office acted correctly in issuing the patent.  Each of the Asserted Claims is presumed valid independently of the validity of any other claim.  Nevertheless, when the validity of a patent has been put at issue as part of patent litigation, it is the responsibility of the jury to review what the Patent Office has done consistent with the Court's instructions on the law.  The fact that a patent application is rejected or amended before the patent is issued has no bearing on its ultimate validity.

Planmeca has asserted as a defense to patent infringement in this case that Osseo's Asserted Patents are invalid.  Because each of the Asserted Claims is presumed valid independently of the validity of each other claim, this puts the burden on Planmeca of proving invalidity by clear and convincing evidence on a claim-by-claim basis that each of the Asserted Claims of the '301 Patent, '262 Patent, and '374 Patent are invalid. Planmeca's burden of proof remains the same regardless of whether the prior art references on which Planmeca is relying to invalidate a patent have previously been before the patent examiner.

Even though the Patent Office examiner allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are proven by Planmeca to be invalid.  For a patent to valid, the subject matter claimed in the individual claims of the patent must be new and not obvious.  A patent cannot take away from the

right of anyone who wants to use what was already known or used by others, or what would have been obvious to those of skill in the art at the time the invention was made.

You must evaluate the invalidity of each Asserted Claim separately. Even if an independent claim is invalid, this does not mean that the dependent claim that depend on it are automatically invalid. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid. This is because the dependent claim includes all of the elements of the independent claim from which it depends.

Planmeca contends that the Asserted Claims are invalid for the following reasons:

1. Because the Asserted Claims would have been obvious to one of ordinary skill in the art at the time of invention;

2. Because claim 1 of the '262 Patent and claim 6 of the '374 Patent fail to satisfy the enablement requirement;

3. Because claim 1 of the '262 Patent and claim 6 of the '374 Patent fail to satisfy the written description requirement.

**INSTRUCTION NO. 38**

**PRIOR ART**

In order for someone to be entitled to a patent, the claimed invention must actually be new over what came before. Prior art is the legal term used to describe what others had done in the field before the invention was made. Prior art is the general body of knowledge in the public domain, such as articles, products, or other patents, before the invention was made. The prior art need not have been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

The parties agree that the following are prior art to the Asserted Patents:

- U.S. Patent No. 5,214,686 ("Webber");

- "Precise Measurement of Vertebral Mineral Content Using Computed Tomography" by Christopher E. Cann ("Cann");

- Planmeca DIMAXIS User Manual ("DIMAXIS");

- U.S. Patent No. 5,500,884 ("Guenther");

- U.S. Patent No. 6,315,445 ("Mazess"); and

- Published proceedings from the Fourth International Workshop on Bone and Soft Tissue Densitometry Using Computer Tomography in Fontevraud, France 1984 ("Fontevraud").

**INSTRUCTION NO. 39**

**PATENT INVALIDITY: PRIOR ART NOT CONSIDERED BY PATENT OFFICE**

Where a party challenging the validity of a patent is relying on prior art that was not considered by the PTO during examination you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

**INSTRUCTION NO. 40**

**PERSON OF ORDINARY SKILL IN THE ART**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art, in the field of the asserted invention, as of the effective filing date of the respective patent.

You must determine the level of ordinary skill in the field of dental and orthopedic densitometry modeling systems. In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of the inventor and other persons actively working in the field;

2. The types of problems encountered in the field;

3. Prior art solutions to those problems;

4. Rapidity with which innovations are made; and

5. The sophistication of the technology.

Osseo contends that a person of ordinary skill in the art to which the Osseo Patents pertain would be an individual with a bachelor's degree in electrical and computer engineering or equivalent technical degree and at least 3–5 years of experience in the diagnostic imaging systems.

Planmeca contends that a person of ordinary skill in the art to which the Osseo Patents pertain would have a graduate degree in engineering or a physical science with experience in densitometry and/or tomographic imaging, or an undergraduate degree in engineering of a physical science with at least five years of combined experience in densitometry and/or tomographic imaging.

## INSTRUCTION NO. 41

## OBVIOUSNESS

Another basis for claiming that a patent is invalid is obviousness. Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. Obviousness may be shown by considering one or more than one item of prior art.

Planmeca contends that all of the Asserted Claims of the '301, '262, and '374 Patents are invalid for being obvious in view of the prior art. Planmeca bears the burden of proving obviousness by clear and convincing evidence. Planmeca must show, by clear and convincing evidence, that the claimed invention would have been obvious to a person having ordinary skill in the art at the time the invention was made. In determining whether the claimed invention was obvious, you must consider each claim separately. You should not use hindsight, such as by using the Asserted Patents as a roadmap to select from the prior art and retrace the path of the inventors. In other words, you should only consider what was known prior to the invention date, without the benefit of the later Asserted Patents, and what those patents teach. In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made. The existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. To show

obviousness, the law does not require that the prior art prove, to a statistical certainty, that the claimed result would work. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof of absolute predictability.

You must put yourself in the place of a person of ordinary skill in the art at the time of invention. In addition, you may consider whether there was a reason to combine or modify the prior art references in the fashion claimed by the patent at issue. To find that the prior art rendered a claimed invention obvious, you must find that a person having ordinary skill in the art would have had a reasonable expectation of successfully accomplishing the claimed systems.

In determining obviousness or non-obviousness of the subject matter of each of the Asserted Claims, you should take the following steps, which I will explain further in just a moment:

1. Determine the scope and content of the prior art;

2. Identify the differences, if any, between each asserted claim and the prior art;

3. Determine the level of ordinary skill in the pertinent art at the time the invention of the patent was made; and

4. Consider objective factors of non-obviousness – that is, additional considerations, if any, that indicate that the invention was obvious or not obvious.

Against this background, you will then decide whether the subject matter of each of the Asserted Claims would have been obvious or nonobvious to a person of ordinary skill in the pertinent art.

**INSTRUCTION NO. 42**

**SCOPE AND CONTENT OF THE PRIOR ART**

In determining obviousness, you must determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem that the inventors faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the claimed invention was trying to solve.

In this case, Planmeca contends that the Asserted Claims are obvious in view of the following prior art:

- Webber in combination with Cann:

    o Claim 1 of the '301 Patent;

    o Claim 1 of the '262 Patent; and

    o Claims 1 and 6 of the '374 Patent.

- Webber in combination with Cann and DIMAXIS:

    o Claim 7 of the '301 Patent.

- Guenther in combination with Mazess and Fontevraud

    o All asserted claims of the Osseo Patents.

- Guenther in combination with Mazess, Fontevraud, and DIMAXIS:

    o Claim 7 of the '301 Patent.

## INSTRUCTION NO. 43

## DIFFERENCES BETWEEN THE CLAIMED INVENTION AND PRIOR ART

You should analyze whether there are any relevant differences between the prior art taken as a whole and the Asserted Claims of the '301 Patent, '262 Patent, and '374 Patent from the view of a person of ordinary skill in the art as of December 1, 1999. Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.

On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether

a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each of the Asserted Claims that Planmeca contends is obvious.

**INSTRUCTION NO. 44**

**LEVEL OF ORDINARY SKILL**

You must consider the perspective of a person of ordinary skill in the art, as explained previously.  This person is presumed to know all the prior art that you have determined to be reasonably relevant.  When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also look to any available prior art to help solve the problem.

**INSTRUCTION NO. 45**

**OBJECTIVE EVIDENCE OF NONOBVIOUSNESS**

You must also take into account any objective evidence (sometimes called "objective indicia" or "secondary considerations") that may shed light on whether the claims were obvious. "Objective indicia" or "secondary considerations" must be considered before a conclusion on obviousness is reached.

"Objective indicia" or "secondary considerations" can include:

1. Whether the invention was commercially successful at least in part as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2. Whether the invention satisfied a long-felt need; and

3. Whether others in the field praised the invention;

Osseo has the burden to show evidence of "objective indicia" or "secondary considerations" and to show that there is a connection, sometimes called a "nexus," between the evidence showing any of these factors and the claimed invention, if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. However, Planmeca will bear the ultimate burden to show obviousness by clear and convincing evidence, taking into account any objective indicia that you may find.

## INSTRUCTION NO. 46

## WRITTEN DESCRIPTION

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the written description requirement. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's effective filing date. Planmeca contends that claim 1 of the '262 Patent and claim 6 of the '374 Patent are invalid because the specification does not contain an adequate written description of the claimed invention. Planmeca has the burden of proving lack of adequate written description for each of the Asserted Claims. To succeed, Planmeca must show by clear and convincing evidence that a person having ordinary skill in the art reading the patent specification as of the effective filing date of December 1, 1999, would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted Claims. If a patent claim lacks written description, it is invalid.

In deciding whether a specification satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date of December 1, 1999. The specification must describe the full scope of the claimed invention, including each element thereof. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill in the art. In other words, that a person having ordinary skill in the art could have envisioned the claimed invention does not satisfy the written description requirement.

The written description does not have to be in the exact words of the claim. The written description requirement may be satisfied by any combination of words, structures, figures, diagrams, formulas, experiments, data, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed inventions. However, a mere wish or plan for obtaining the claimed inventions is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, including:

1. The nature and scope of the patent claims;

2. The complexity, predictability, and maturity of the technology at issue;

3. The existing knowledge in the particular field; and

4. The scope and content of the prior art.

If you find that one or more of the Asserted Claims did not comply with the written description requirement, you must find that claim invalid.

**INSTRUCTION NO. 47**

**ENABLEMENT**

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement. Planmeca contends that claim 1 of the '262 Patent and claim 6 of the '374 Patent are invalid because the specification does not "enable" the full scope of the claimed invention. Planmeca has the burden of proving that each of the Asserted Claims is not enabled. To succeed, Planmeca must show by clear and convincing evidence that the specification does not contain a sufficient full and clear description to have allowed a person of ordinary skill in the art to make and use the full scope of the claimed invention as of the effective filing date, here December 1, 1999, without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors, including:

1. The quantity of experimentation necessary;

2. The amount of direction or guidance disclosed in the patent;

3. The presence or absence of working examples in the patent;

4. The nature of the invention;

5. The state of the prior art;

6. The relative skill of those in the art;

7. The predictability or unpredictability of dental and orthopedic densitometry modeling systems; and

8. The breadth of the claims.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors in determining whether or not a person of ordinary skill in the art would need to experiment unduly to make and use the full scope of the claimed invention.

If you find that one or more of the Asserted Claims did not comply with the enablement requirement, you must find that claim invalid.

**INSTRUCTION NO. 48**

**PATENT DAMAGES INTRODUCTION**

If you determine that Planmeca has infringed any of the Asserted Claims of the Asserted Patents, and that those claims are not invalid, you must determine the amount of damages adequate to compensate Osseo for the infringement you find. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that each of the Asserted Claims is either invalid or not infringed, then you should not consider damages in your deliberations.

Osseo must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence. Osseo must prove its damages with reasonable certainty but need not prove the amount of its damages with mathematical precision. If you find that any of the Asserted Claims is infringed and not invalid, Osseo is entitled to at least a reasonable royalty to compensate it for that infringement. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Osseo seeks damages as measured by a reasonable royalty. A reasonable royalty is defined as the money amount Osseo and Planmeca would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is not more and no less than the value that the patented invention has provided Planmeca. Damages are not meant to punish an infringer.

I will now give you more detailed instructions regarding damages.

**INSTRUCTION NO. 49**

**DAMAGES: REASONABLE ROYALTY**

Osseo is seeking damages in the form of a reasonable royalty in this case. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations.

Unlike in a real-world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patents are valid and infringed and that both parties were willing to enter into an agreement. You should assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.

Having that in mind, you consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement. The reasonable royalty award must be based on the incremental value that the patented invention adds to an accused system. When the infringing systems have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. An appropriate combination of royalty base

and royalty rate must reflect the value attributable to the infringing features, if any, of the accused systems, and no more.

**INSTRUCTION NO. 50**

**DAMAGES: APPORTIONMENT**

Any amount of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused system or other factors such as marketing, advertising, or Planmeca's size or market position. A royalty compensating the patent owner for damages must reflect the value attributable to the infringing features of the accused system, and no more. In other words, the royalty base must reflect the value attributable to the patented technology. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the systems accused of infringement have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

**INSTRUCTION NO. 51**

**DAMAGES: REASONABLE ROYALTY RELEVANT FACTORS**

In determining the amount of a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. Any royalties received by the patentee for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the Asserted Patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

7. The remaining life of the Asserted Patents and the term of the license.

8. The established profitability of the product made under the Asserted Patents; their commercial success; and their current popularity.

9. The utility and advantage of the patented property over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, that amount which a prudent licensee – who desires, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which

amount would have been acceptable by a prudent patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license. This may include the availability of commercially acceptable, non-infringing alternatives at the time of the hypothetical negotiation.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the accused infringer would have been willing to pay, and the patent owner would have been willing to accept, acting as normally prudent businesspeople

**INSTRUCTION NO. 52**

**DAMAGES: COMPARABLE LICENSE AGREEMENTS**

The existence of any comparable license agreements may inform your decision as to the proper amount and form of the reasonable royalty award.

Whether a particular license agreement is comparable to the hypothetical license depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. The question is whether the agreement is sufficiently comparable that it provides a reasonable indication of how the parties to the hypothetical negotiation would have negotiated a license to the Asserted Patents.

However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the patent owner and the accused infringer, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties who were involved in a lawsuit.

## INSTRUCTION NO. 53

## DAMAGES: INTEREST

In determining the amount of damages, if any, you should not consider interest in any way.

**INSTRUCTION NO. 54**

**DELIBERATION AND VERDICT**

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## INSTRUCTION NO. 55

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review it with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.  Place the completed verdict sheet in the envelope we will give you.  Do not show the completed verdict form to anyone or share it with anyone until you are in the Courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation

as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

# INSTRUCTION NO. 56

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So, you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**INSTRUCTION NO. 57**

**SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat, or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

## INSTRUCTION NO. 58

## COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.