IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OSSEO IMAGING, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>PLANMECA USA INC.,<br><br>                    Defendant. | **C.A. NO. 1:17-CV-01386-JFB**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Defendant's, Planmeca USA Inc.'s ("Planmeca's"), renewed motions for judgment as a matter of law or, in the alternative, new trial. D.I. 203; D.I. 205; D.I. 207. For the reasons stated herein, the motions are denied.

I.  **BACKGROUND**

Osseo Imaging, LLC ("Osseo") sued Planmeca alleging infringement of three of its patents, U.S. Patent Nos. 6,381,301; 6,944,262; and 8,498,374 (the "'301 Patent," the "'262 Patent," and "'374 Patent," respectively). D.I. 1. A jury trial was held August 22 through 26, 2022. Planmeca moved for judgment as a matter of law for invalidity and noninfringement under Fed. R. Civ. P. 50(a). The jury thereafter rendered its verdict, finding that Planmeca had directly infringed all asserted claims except claim 6 of the '374 Patent. D.I. 191 at 2–3. The jury also determined that none of the asserted claims were invalid as Planmeca had argued. D.I. 191 at 4–6. The jury awarded Osseo a reasonable royalty of $2,300,000. D.I. 191 at 7. After the verdict, the Court denied Planmeca's initial motions for judgment as a matter of law as moot. D.I. 194. Planmeca now renews its

1

motions for judgment as a matter of law under Fed. R. Civ. P. 50(b) as to noninfringement of claims 1 and 7 of the '301 Patent, claim 1 of the '262 Patent, and claim 1 of the '374 Patent; invalidity for lack of written description and enablement as to claim 1 of the '262 Patent and claim 6 of the '374 Patent; and invalidity for obviousness as to claims 1 and 7 of the '301 Patent, claim 1 of the '262 Patent, and claim 1 and 6 of the '374 Patent. D.I. 203; D.I. 205; D.I. 207. In the alternative, Planmeca moves for a new trial.

## II. ANALYSIS

### A. Standards of Review

#### 1. Judgment as a Matter of Law

The law of the regional circuit—here the Third Circuit—governs the standards for deciding motions for judgment as a matter of law under Fed. R. Civ. P. 50(b) and new trial under Fed. R. Civ. P. 59(a). *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1325 (Fed. Cir. 2016); *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012). Under Rule 50(b), in ruling on a renewed motion, "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). A judgment as a matter of law is appropriate when "the verdict is not supported by legally sufficient evidence." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). In the Third Circuit, a "court may grant a judgment as a matter of law contrary to the verdict only if 'the record is critically deficient of the minimum quantum of evidence' to sustain the verdict." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)).

"In considering that issue the court 'may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.'" *Id.* (quoting *Lightning Lube, Inc.*, 4 F.3d at 1166). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted). A renewed post-verdict motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) "may not be made on grounds not included in the earlier [Rule 50(a)] motion." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1105 (Fed. Cir. 2003).

   2. New Trial

Under Fed. R. Civ. P. 59(a), the Court may "grant a new trial on some or all of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "The district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991); *see also Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006). Granting a new trial and "[v]acating a verdict as being against the great weight of the evidence should occur 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" *Brown v. Grass*, 544 F. App'x 81, 87 (3d Cir. 2013) (quoting *Williamson*, 926 F.2d at 1353).

### B. Infringement

Planmeca moves for judgment as a matter of law that it did not infringe claims 1 and 7 of the '301 Patent, claim 1 of the '262 Patent, or claim 1 of the '374 Patent. D.I. 207. It argues there could be no infringement because Planmeca's accused systems did not practice the densitometry, tomographic modeling, or comparing limitations in the asserted claims. D.I. 208 at 4.

To prove literal infringement, a patent owner must prove that every element of the claim is present in the accused device. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). "Judgment as a matter of law of no literal infringement is appropriate if no reasonable fact finder could determine that the accused devices meet every limitation of the properly construed claims." *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002) (quoting *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999)).

Planmeca first argues its accused systems do not meet the densitometry limitation in the asserted claims because Osseo failed to prove they measure quantitative—as opposed to qualitative—bone density as required by Court's definitions in its claim-construction order. D.I. 208 at 10–13. This argument is contradicted by the testimony of Osseo's expert, Dr. Omid Kia, who testified that the accused systems show bone density values as calculated, i.e., quantitatively determined, in Hounsfield Units. Planmeca's own witness, Timo Muller agreed that the accused devices generate meaningful Hounsfield Unit calculations. Planmeca focuses on the fact that the accused systems display images in a grayscale format, which it argues is merely qualitative, but a reasonable jury could determine from the testimony that the accused systems

nevertheless calculate bone density in a quantitative manner prior to or in addition to the grayscale projections.

As to the "tomographic modeling" limitation, Planmeca argues the evidence did not show the accused systems merged information from multiple scans as opposed to taking a single scan.  D.I. 208 at 16–19.  However, Dr. Kia testified at length as to how the accused systems met the tomographic modeling limitation.  While Planmeca argues this testimony contradicts other evidence as to how its devices work, the jury was free to credit Dr. Kia's testimony and find the "tomographic modeling" limitation was met.

As to the "comparing" limitation, Planmeca argues the evidence failed to show the computer "compared" the tomographic images rather than merely presenting them for a human to compare.  D.I. 208 at 19–20.  Again, Dr. Kia's testimony precludes judgment as a matter of law on this issue.  Dr. Kia testified that the accused systems' software not only created and stored the tomographic models, but also compared them.  While an end user (i.e., a human) inevitably uses the software to engage in some manner of comparing images, this does not prevent the jury from crediting Dr. Kia's testimony that the "comparing" limitation was met by the computer as well.

Finally, Planmeca argues that Dr. Kia's testimony should be disregarded in its entirety because he was not a person of ordinary skill in the art as of the patents' effective date in 1999.  D.I. 208 at 21.  Planmeca points out that Dr. Kia testified he acquired his expertise after 1999.  Planmeca's argument is without merit.  It points to no legal support for the supposed requirement that an expert attain his or her expertise prior to a patent's effective date.  The jury was free to credit Dr. Kia's testimony in reaching its conclusions on infringement.

### C. Invalidity for Lack of Written Description and Enablement

Planmeca next moves for judgment as a matter of law that claim 1 of the '262 Patent and claim 6 of the '374 patent are invalid for lack of written description and enablement. D.I. 203.

35 U.S.C. § 112, first paragraph, requires a written "description [that] clearly allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal quotation marks and citation omitted). "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.*

"Enablement requires that 'the specification teach those in the art to make and use the invention without undue experimentation.'" *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1154 (Fed. Cir. 2019) (quoting *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)). "A claim is not enabled when, 'at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation.'" *Id.* (quoting *Wyeth & Cordis Corp. v. Abbott Lab'ys*, 720 F.3d 1380, 1384 (Fed. Cir. 2013)). The factors to consider regarding undue experimentation are:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012) (citing *In re Wands*, 858 F.2d at 737).

Planmeca argues claim 1 of the '262 Patent and claim 6 of the '374 Patent incorporated disclosures added after the agreed-upon priority dates of the patents, and if the written descriptions are limited to included only disclosures prior to the priority dates, they are lacking.  D.I. 204 at 9–11.  Planmeca points specifically to the comparing limitation.  However, Dr. Kia testified that the comparing technology was adequately described in the patents, contradicting Planmeca's expert's testimony.  Additionally, while Planmeca is correct that the patents incorporate later disclosures, the jury was correctly instructed on the patents' filing dates.  There is no evidence to suggest the jury improperly considered irrelevant evidence as opposed to simply crediting one witness's testimony over another.

As to enablement, Planmeca argues that the patents' inventor, Dr. Ronald Massie, admitted the specifications do not describe how a computer should compare two tomographic models, thus rendering the patents not enabled.  However, as set forth above, Dr. Kia testified regarding the comparison limitation.  Additionally, Planmeca presented scant evidence regarding the "undue experimentation" factors.  This is legally sufficient evidence by which the jury found enablement.

### D.  Invalidity for Obviousness

Planmeca next moves for judgment as a matter of law that claims 1 and 7 of the '301 Patent, claim 1 of the '262 Patent, and claims 1 and 6 of the '374 Patent are invalid for obviousness.  D.I. 205.

To be patent eligible, an invention must not have been obvious to a skilled artisan at the time of invention.  See 35 U.S.C. § 103.  "Whether a patent is invalid as obvious is ultimately a determination of law based on underlying determinations of fact."  *Geo. M.*

7

*Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1300 (Fed. Cir. 2010). A legal determination of obviousness must be based on four factual inquiries: "1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000). "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Rather, "[a] party seeking to invalidate a patent on obviousness grounds must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014).

      Planmeca argues that the prior art (Guenther, Mazess, Fontevraud, and DIMAXIS) render the asserted claims invalid for obviousness. D.I. 206 at 7. Planmeca and its expert, Dr. Robert Pelc, focused heavily on the facts that the USPTO did not consider these specific instances of prior art and Osseo did not address each one separately at trial. However, the evidence shows that the USPTO did consider a separate instance of prior art, Webber, which made the same disclosures as Guenther. Additionally, Dr. Kia disputed Dr. Pelc's conclusions regarding obviousness, testifying that neither Webber nor Guenther disclose computed tomography in dentistry, and it would not have been obvious to combine prior teachings. There is therefore sufficient evidence by which the jury concluded the patents were not invalid for obviousness.

8

### E. New Trial

Planmeca argues, in the alternative, it is entitled to a new trial on the same issues it raises in its renewed motions for judgment as a matter of law. It advances no separate argument as to why a new trial is warranted if the Court determines judgment as a matter of law is inappropriate. The Court cannot say the verdict was against the weight of the evidence or resulted in a miscarriage of justice. See *Springer*, 435 F.3d at 274. Thus, a new trial is not warranted.

### III. CONCLUSION

For the reasons stated above, Planmeca is not entitled to judgment as a matter of law or a new trial on any of the asserted issues. The jury's verdict will stand.

IT IS ORDERED:

1. Defendants' motions for judgment as a matter of law or, alternatively, new trial (D.I. 203; D.I. 205; D.I. 207) are denied.

2. A final judgment on the verdict will be entered.

Dated this 8th day of February, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge